UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EMBRAER AIRCRAFT MAINTENANCE SERVICES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil No. 3:13-cv-0059 ) Judge Aleta A. Trauger ) |
| AEROCENTURY CORP., | ) ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

There are two pending motions before the court. The plaintiff Embraer Aircraft Maintenance Services, Inc. ("Embraer") has filed a Motion for Leave to File a Further Amended Complaint ("Motion for Leave to Amend") (Docket No. 41), to which the defendant AeroCentury Corp. ("AeroCentury") has filed a Response in opposition (Docket No. 43), Embraer has filed a Reply (Docket No. 47), and AeroCentury has filed a Sur-Reply (Docket No. 51). Embraer has also filed a Motion for Partial Summary Judgment (Docket No. 37), to which AeroCentury has filed a Response in opposition (Docket No. 44), and Embraer has filed a Reply (Docket No. 48). For the following reasons, the motions will be denied.

## BACKGROUND[1]

---

[1] The pending motions do not affect the primary claim in this case – *i.e.*, foreclosure on Embraer's alleged repairman's lien against the aircraft owned by AeroCentury – regarding which no dispositive motion is pending. Accordingly, this section focuses on the facts necessary for the resolution of the pending motions.

For purposes of the Motion for Leave to Amend, the court assumes the facts in the proposed Second Amended Complaint to be true (as has AeroCentury in its opposition).

1

This case involves allegations that Embraer was not properly remunerated for repair and maintenance work it performed on an aircraft owned by AeroCentury. AeroCentury owns aircraft. Third party Colgan Air, Inc. ("Colgan") operates commercial aircraft. Embraer provides maintenance services, repairs, materials, and improvements to aircraft at a location in Nashville, Tennessee.

AeroCentury leased a particular Saab airplane ("Aircraft") to Colgan.[2] (Docket No. 41-1, ¶ 4.) Embraer is not a party to the lease. (*Id*.) In November of 2011, Colgan entered into an agreement with Embraer to perform maintenance services on various aircraft operated by Colgan, including "lease return inspections and required heavy maintenance." (Id., ¶ 6.) Colgan agreed to pay Embraer for the services it performed. (*Id*.) AeroCentury is not a party to the services agreement between Colgan and Embraer. (*Id*.)

Around the time Colgan and Embraer entered into their services agreement, Colgan delivered the Aircraft to Embraer's facility in Nashville for a "lease return inspection." (Id., ¶ 8.) A lease return inspection occurs before an aircraft's lessee returns the aircraft to the lessor at the end of a lease. (*Id*.) As pleaded in the proposed Second Amended Complaint, "Colgan intended to return the Aircraft to AeroCentury, which owned the Aircraft and had leased it to Colgan, and AeroCentury required Colgan to complete a lease return inspection pursuant to the terms of its lease of the Aircraft to Colgan." (*Id*.) Embraer inspected the Aircraft and identified necessary maintenance services and repair items. (*Id*.) AeroCentury knew that Embraer was performing maintenance, improvements, and repairs to the Aircraft, and agents of AeroCentury

---

[2] Embraer has attached an undated, unsigned portion of this lease to its proposed Second Amended Complaint. (Docket No. 41-2, Ex. 1.)

participated in the lease return inspection process to insure that the Aircraft was being brought up to what AeroCentury deemed to be satisfactory return condition. (*Id*., ¶¶ 8-25.)

The maintenance services, repairs, materials, and improvements provided by Embraer maintained and improved the Aircraft. (*Id*., ¶ 28.) On the same day that Embraer completed its work on the Aircraft, it issued an invoice to Colgan in the amount of $351,465.20. (*Id*., ¶ 29; Docket 41-4, Ex. 3.) Colgan did not pay Embraer's invoice for the maintenance services, repairs, materials, and improvements completed on the Aircraft before Colgan filed a petition for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York on April 1, 2012. (Docket No. 41-1, ¶ 31.) As of that date, therefore, Colgan had an unpaid balance owed to Embraer for the work performed on the Aircraft. (*Id*., ¶ 32.)

Embraer alleges that, as of the same date that Embraer completed its work on the Aircraft, a repairman's lien secured by the Aircraft arose pursuant to T.C.A. §§ 66-19-101, 66-19-102, 66-19-301, and 66-19-302. (Docket No. 41-1, ¶ 30.) Embraer filed a "Notice of Lien" against the Aircraft with the U.S. Federal Aviation Administration on April 10, 2012, and with the Register of Deeds for Davidson County, Tennessee on April 9, 2012, pursuant to Title 14, Part 49 of the Code of Federal Regulations, 49 U.S.C. §§ 44107 and 44108, and Sections 362(b)(3) and 546(b)(1)(A) of the Bankruptcy Code.[3] (*Id*., ¶ 33; Docket No. 41-4, Ex. 3.) Embraer continues to seek payment of the invoice from Colgan in its bankruptcy case.

---

[3] Embraer provided notice to Colgan of its repairman's lien against the Aircraft as permitted by Section 546 of the Bankruptcy Code. (*Id*., ¶ 34, Docket No. 41-5, Ex. 4.) Embraer also provided notice to Colgan and AeroCentury of its repairman's lien against the Aircraft as required pursuant to T.C.A. § 66-19-301. (Id., ¶ 35, Docket No. 41-6, Ex. 5.)

According to AeroCentury, Colgan also failed to make all of the payments due to AeroCentury under the lease; AeroCentury, therefore, also has a claim pending against Colgan in the ongoing bankruptcy proceedings. (Docket No. 43 at p. 4.)

On January 25, 2013, while the bankruptcy proceedings against Colgan were ongoing, Embraer filed the first Complaint in this case against AeroCentury. (Docket No. 1.) The Complaint sought (1) a judgment against AeroCentury *in rem*, (2) enforcement of the repairman's lien against the Aircraft in favor of Embraer, (3) an order directing the sale of the Aircraft by the U.S. Marshal Service with the proceeds to be directed to Embraer, and (4) the peaceful surrender of title to the Aircraft by AeroCentury.[4] (*Id*. at p. 4.) On November 4, 2013, Embraer was granted leave to file an Amended Complaint (Docket No. 23), which it did (Docket No. 24). Embraer's core factual allegations and prayer for relief regarding foreclosure of the alleged repairmen's lien remained the same. (*See id*.) AeroCentury answered the Amended Complaint on December 9, 2013. (Docket No. 26.)

Over twenty months later, Embraer concurrently filed the pending motions. (Docket Nos. 37, 41.) With respect to the Motion for Leave to Amend, AeroCentury filed its Response on September 14, 2015 (Docket No. 43), Embraer filed its Reply on September 24, 2015 (Docket No. 47), and AeroCentury filed its Sur-Reply on September 30, 2015 (Docket No. 51). With

---

[4] The defendant timely filed a Motion to Dismiss on April 1, 2013, arguing (1) that the court lacked personal jurisdiction over AeroCentury, (2) improper venue, and (3) that the plaintiff failed to adequately allege the subject matter jurisdiction of the court because it did not request attachment nor satisfy the requirements for attachment. (Docket No. 9 at 2.) On June 10, 2013, while the defendant's Motion to Dismiss was pending before the court, Embraer filed a Motion for Leave to File an Amended Complaint pursuant to Fed. R. Civ. P. 15(a). (Docket Nos. 20-21.) On November 4, 2013, the court granted Embraer permission to file an Amended Complaint and denied the Motion to Dismiss as moot. (*See* Docket No. 23.)

respect to the Motion for Partial Summary Judgment, AeroCentury filed its Response on September 17, 2015 (Docket No. 44), and Embraer filed its Reply on September 28, 2015 (Docket No. 48).

## ANALYSIS

Where both a dispositive motion and a motion to amend the complaint are pending, the court must first address the motion to amend the complaint. *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988).

**I.** **Motion to Amend**

    **A.** **Standard**

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course either (a) within twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, the court should "freely" give leave when justice so requires. *Foman v. Davis*, 371 U.S. 178, 230 (1962).

However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman,* 371 U.S. at 182). "A proposed

amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, St. of Mich., Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)).

**B.     Embraer's Motion for Leave to Amend**

Embraer seeks to add a cause of action for unjust enrichment against AeroCentury because (1) Embraer provided services, material, labor, and improvements to the Aircraft,[5] (2) Embraer may not be paid pursuant to the repairmen's lien because AeroCentury contends that Embraer's repairman's lien is worthless as junior to a prior secured interest in the Aircraft, and (3) AeroCentury refuses to pay the invoice Embraer submitted to Colgan for the services, material, labor, and improvements Embraer performed pursuant to the agreement between Colgan and Embraer.

AeroCentury contends that the Motion for Leave to Amend should be denied on futility grounds – *i.e.*, the new unjust enrichment cause of action would be subject to a Rule 12(b)(6) motion to dismiss. Under Tennessee law, the elements of a claim of an unjust enrichment claim are: (1) a benefit was conferred upon the defendant by the plaintiff; (2) the defendant appreciated the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying for it. *Bennett v. Visa U.S.A., Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) (quoting *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)). Specifically, AeroCentury argues that it is impossible for Embraer to meet the third prong of this test because, as pleaded in the proposed Second Amended Complaint, AeroCentury already provided consideration in exchange for the benefit of the work done by Embraer pursuant to the terms of its lease with

---

[5] Embraer stresses that AeroCentury does not deny that Embraer performed all work as alleged.

Colgan. Namely, AeroCentury agreed to lease the Aircraft to Colgan for a specific period of time at a specific price. Various factors went into the AeroCentury's determination of the lease pricing. One of them necessarily was – as pleaded by Embraer in the proposed Second Amended Complaint – that the lease "*required Colgan to complete a lease return inspection pursuant to the terms of its lease of the Aircraft to Colgan.*" (Docket No. 41-1 at ¶ 8.) In return for the terms that AeroCentury offered, Colgan agreed to make the lease payments and ensure that the plane underwent the lease return inspection and received all necessary repairs in connection therewith (at Colgan's expense) prior to returning the Aircraft to AeroCentury at the end of the lease period. (Docket No. 41-2, Ex. 1.)

Accordingly, Embraer's work on the Aircraft pursuant to its services agreement with Colgan did not serve to enrich (justly or unjustly) AeroCentury. Rather, the benefit conferred on AeroCentury had already been built into the economic terms of the lease; by entering a contract with Embraer to have the work performed, Colgan was merely fulfilling one of its contractual obligations to AeroCentury.[6] Moreover, AeroCentury cites to a case in another jurisdiction in which a state supreme court found no unjust enrichment based on nearly identical facts. *See Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, 623 P.2d 758, 763-64 (Wyo. 1981) (finding defendant owner of an airplane was not unjustly enriched by repair work the plaintiff had performed on the plane pursuant to a contract with a third-party lessee of the plane who was

---

[6] There is no dispute that AeroCentury fulfilled its end of the lease with Colgan. As mentioned *supra*, Colgan also failed to make all of the lease payments. AeroCentury therefore has an argument that it is actually "under-enriched," as it is not fully satisfied by Colgan even as to the basic value of the bargained-for lease.

responsible for the airworthiness return repair work under the terms of the lease).[7]

Tennessee law of quasi-contract echoes the same basic legal principle. For example, in *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966), the Tennessee Supreme Court made it clear that recovery on an unjust enrichment theory "may not be had in every instance where a subcontractor or materialman has furnished materials or labor which benefit a third person." *Id.* The court instructed: "[t]he most significant requirement for a recovery on quasi-contract is that the enrichment to the defendant be unjust. Consequently, if the landowner *has given any consideration to any person for the improvements*, it would *not* be unjust for him to retain the benefit without paying the furnisher." (*Id*. (emphasis added).) More recently, the Tennessee Court of Appeals reiterated the core holding of *Paschall's* when it considered the case of a contractor who sought to bring an unjust enrichment claim in addition to a claim based on a materialman's lien. In *D.T. McCall & Sons v. Seagraves*, 796 S.W.2d 457, 463-64 (Tenn. Ct. App. 1990), the court explained that "[a] clear foundation for an unjust enrichment claim exists

---

[7] In *Rocky Mountain Turbines*, 660 Syndicate leased a plane to Wyoming Airlines. Under the lease, Wyoming Airlines was required to be responsible for all costs of maintenance and operation and to return the aircraft in an "airworthy" condition. During the lease, Rocky Mountain made repairs to the plane, but Wyoming Airlines never paid for these repairs. Rocky Mountain filed a claim against 660 Syndicate for unjust enrichment based on the work it did for Wyoming Airlines. In its claim, Rocky Mountain alleged that repairs it made to the leased aircraft resulted in an unjust benefit to 660 Syndicate as the owner of the aircraft. The trial court rejected this claim. In affirming the trial court's rejection of this claim, the Wyoming Supreme Court stated:
> The lease under which [the lessee] held [the] aircraft required [the lessee] to be responsible for all costs of maintenance and operation. The aircraft was to be returned to [the owner] in an "airworthy" condition the same condition in which it was received. *[The owner] did not benefit from the repairs made by [the plaintiffs] beyond that contracted for by [the lessee]. [The lessee] benefitted from such repairs to the extent of fulfilling its obligation under the lease.*

623 P.2d at 763-64 (emphasis added).

when the property owner has paid *no one* for the value of the materialman's performance. . . . [T]he most significant requirement for a recovery on quasi-contract is that the enrichment to the defendant be unjust. Consequently, if the landowner has given any consideration to any person for the improvements, it would not be unjust for him to retain the benefit without paying the furnisher." *Id.* (emphasis added); *see also Christmas Lumber Co. v. Shell*, 574 S.W.2d 742, 744 (Tenn. Ct. App. 1978) (same).

Here, it is clear, as pleaded, that AeroCentury gave consideration for everything provided for in the lease, including the lease return inspection and maintenance work that Colgan was required to hire a company such as Embraer to perform, by allowing Colgan to use the Aircraft for the term of the lease. It is not, therefore, unjust for AeroCentury to retain the benefits of the lease without paying Embraer. This is especially true under Tennessee law where Embraer, as the lienholder, has not exhausted its remedies against Colgan as the third party/lessee. *See Paschall's*, 407 S.W.2d at 155; *D.T. McCall & Sons*, 796 S.W.2d at 463; *Christmas Lumber*, 574 S.W.2d at 744. It is undisputed that Embraer's claim against Colgan remains pending in the bankruptcy proceeding.

In its brief Reply, Embraer does not attempt to distinguish the instant case from the scenario in *Rocky Mountain Turbines* (indeed, Embraer does not mention any of the precedent adduced by AeroCentury). (*See* Docket No. 47 at p. 1.) Instead, Embraer argues that, if unjust enrichment turns on consideration, consideration here is "a matter of fact not in the record," and thus a claim based upon it cannot be declared futile. (*Id.*) However, on a motion to dismiss, the court would look only to the allegations of Embraer's proposed Second Amended Complaint, and these facts alone demonstrate that an unjust enrichment claim against AeroCentury cannot

9

proceed as a matter of law. In particular, Embraer alleges the existence of the lease between AeroCentury and Colgan, and it is clear that AeroCentury's consideration under this lease was the provision of the Aircraft to Colgan. It is this allegation of consideration that precludes Embraer's claim of unjust enrichment.

Embraer also argues in its Reply that: "[n]or is it in the record that the maintenance services, repairs, and improvements requested by AeroCentury's agent or employee were required under the lease, rather than by AeroCentury, which expanded that scope of work, as alleged." (*Id*.) The court interprets this statement to mean that, if Embraer expanded the scope of work beyond that of the "lease return inspection" provided for in the lease, then AeroCentury could have potentially been unjustly enriched beyond the value of the lease (unlike the factual scenario in *Rocky Mountain Turbines*). In its Sur-Reply, AeroCentury responds that Embraer has not pleaded that the work for which it seeks to recover unjust enrichment damages was outside the scope of the repairs contemplated by the lease. (Docket No. 51 at p. 1.)

The court has closely examined the proposed Second Amended Complaint and concurs with AeroCentury. In the proposed Second Amended Complaint (and the now operative Amended Complaint), Embraer alleges that AeroCentury's agent was involved in the lease return inspection and repair process by, *inter alia*, participating in developing the scope of work, noting discrepancies, managing the scope of work, and performing inspections. However, there are no allegations that AeroCentury's agents assigned additional work to Embraer outside of the lease return inspection process for the benefit of AeroCentury. Indeed, the Second Amended Complaint repeatedly stresses that the work being performed on the Aircraft was being done to ensure Colgan's compliance with the terms of the lease between Colgan and AeroCentury

concerning the Aircraft.

For these reasons, the proposed Second Amended Complaint presents an unjust enrichment claim that is futile because it is subject to dismissal under Rule 12(b)(6).[8]

## II.     Motion for Partial Summary Judgment

Embraer moves for partial summary judgment on the proposed unjust enrichment claim. Because the court will disallow the addition of that claim as futile, the Motion for Partial Summary Judgment is mooted.

## CONCLUSION

The Motion for Leave to File a Further Amended Complaint (Docket No. 41) is **DENIED**. The Motion for Partial Summary Judgment (Docket No. 37) is **DENIED AS MOOT**.

It is so **ORDERED**.

Enter this 24th day of November 2015.

_____
ALETA A. TRAUGER
United States District Judge

---

[8] The court notes that, in the Motion for Leave to Amend, Embraer suggests that it could maintain its unjust enrichment claim under the general prayer for relief in the pending Amended Complaint (*i.e.*, without the proposed Second Amended Complaint). (Docket No. 42 at pp. 3-5.) The court, however, finds that the Amended Complaint is focused solely upon the repairman's lien and that an unjust enrichment claim does not fall within the penumbra of the Amended Complaint such that it would be an appropriate basis for an award of damages under the general prayer for relief.

11